**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN GAGLIARDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0095 |
| | ) | |
| D. MICHAEL FISHER, former | ) | |
| Attorney General; KENNETH NYE, | ) | |
| Supervisory Special Agent; DAVID K. | ) | |
| FRATTARE, Special Agent; JACK | ) | |
| O'BRIEN, Special Agent, Bureau of | ) | |
| Criminal Investigations; | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA, OFFICE OF | ) | |
| ATTORNEY GENERAL; | ) | |
| BARBARA HAFER, Treasurer; | ) | |
| MICHAEL CHAPEL, Treasury Investigator; | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA, OFFICE OF THE | ) | |
| TREASURER, in their personal and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

CONTI, District Judge.

## I.   *Introduction*

Plaintiff John Gagliardi ("plaintiff") filed this civil action against defendants D.

Michael Fisher, former Attorney General of Pennsylvania ("Fisher"), Kenneth Nye,

Supervisory Special Agent ("Nye"), David K. Frattare, Special Agent ("Frattare"), Jack

O'Brien, Special Agent, Bureau of Criminal Investigations ("O'Brien"), the
Commonwealth of Pennsylvania, Office of Attorney General ("Attorney General's
Office"), Barbara Hafer, Treasurer of Pennsylvania ("Hafer"), Michael Chapel, Treasury
Investigator ("Chapel"), and the Commonwealth of Pennsylvania, Office of the Treasurer
("Treasurer's Office"), in their personal and official capacities (collectively referred to as
"defendants"), alleging various federal constitutional claims under 42 U.S.C. § 1983,
claims under the Pennsylvania Constitution, and various tort claims arising under
Pennsylvania law.  The action was initially commenced by plaintiff in the Pennsylvania
Court of Common Pleas, Allegheny County, and defendants removed the case to this
court pursuant to 28 U.S.C. § 1441.  Jurisdiction over plaintiff's federal question claims is
predicated on 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over plaintiff's
state law claims is predicated on 28 U.S.C. § 1367.

Pending before the court is a motion to dismiss filed pursuant to Federal Rule of
Civil Procedure 12(b)(6) by defendants (Doc. No. 6).  Defendants seek to dismiss
plaintiff's complaint in its entirety for failure to state claims upon which relief can be
granted.  The court finds that plaintiff, with respect to his federal question claims, failed
to state any claim upon which relief can be granted.  The court will dismiss these claims
with prejudice, since leave to amend would be futile.  Given that plaintiff's federal
question claims will be dismissed, and since his remaining claims arise under

Pennsylvania law, the court will decline to exercise supplemental jurisdiction over those claims.  28 U.S.C. § 1367(c)(1), (3).

## II.   *Facts Accepted as True for the Purpose of Deciding the Motion*

The complaint is lengthy and make numerous factual allegations which must be accepted as true for the purpose of deciding the motion to dismiss.  Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir. 2006).  The following facts were set forth in the complaint and are accepted as true for purposes of this decision.  The court, however, makes no findings regarding the truth of the complaint's allegations.

### A.  *General background*

Plaintiff is an author and inventor of the Multi-stage Liquid Elevator.  (Court of Common Pleas Complaint ("Compl."), Doc. No. 1-3 ¶ 1).  He is also a philanthropist and a retired warehouseman, and his office is located in the USI Industrial Park at 191 Wall Road, Jefferson Hills, Pennsylvania, 15025 (the "premises").  Id.  At the time of the events alleged by plaintiff, Fisher was the Attorney General of Pennsylvania and Hafer was the Treasurer of Pennsylvania.  Id. ¶¶ 2, 7.  Nye was a Supervisory Special Agent with the Bureau of Criminal Investigations, which is located within the North Huntington office of the Attorney General's Office.  Id. ¶ 3.  Frattare was a Special Agent within that same office.  Id. ¶ 4.  O'Brien was a Special Agent with the Bureau of Criminal Investigations, which is located within the Harrisburg office of the Attorney General's Office.  Id. ¶ 5.

Chapel was an investigator employed by the Pennsylvania Office of the Treasurer, which is located in Harrisburg, Pennsylvania.  Id. ¶ 8.

### (1) AT&T litigation

William Fiore ("Fiore") had knowledge of Bell System telecommunications equipment that was dumped in the Kelly Run Landfill.  Id. ¶ 34.  The equipment consisted of extremely valuable materials that were factored into a scheme to generate false labor hours, thereby increasing the telephone bills of various customers.  Id.  The Attorney General's Office had threatened plaintiff with prosecution in the 1980's due to his assistance to Fiore.  Id.  Fiore was the target of a prosecution himself.  Id. ¶ 34.  At the time of Fiore's death in January 2003, plaintiff was assisting his efforts to sue the Attorney General's Office.  Id.  In 1979, plaintiff had attempted to call a fraudulent scheme by AT&T to the attention of federal and state authorities.  Id. ¶ 35.  At that time, plaintiff was in contact with both the Pennsylvania Public Utilities Commission and the Pennsylvania Attorney General's Office.  Id.  Nye emerged as the contact person for both agencies.  Id.

Plaintiff reasonably believed that a settlement may have been forthcoming in a state lawsuit against AT&T that had been filed by USIF, Inc. in 1980 at GD 80-21577.  Id. ¶ 71-72.  AT&T was the parent company of two wholly owned subsidiaries, which were known as Bell Telephone Company of Pennsylvania and Western Electric Company.  Id. ¶ 72.  In 1978, AT&T initiated a settlement parley at which plaintiff was to meet with senior

executives from AT&T, Bell Telephone Company and Western Electric Company.  Id. ¶ 73.  Thereafter, AT&T leaders hosted plaintiff and Dr. Gabriel DeMedio, the USIF, Inc., vice-president, on a trip to AT&T's New York headquarters.  Id.  AT&T promised to settle all outstanding matters.  Id.  When Dr. DeMedio was proffered as a defense witness in connection with matters relating to a letter found in 2002 and as a source of potentially useful information for the Attorney General's Office, he was not contacted by any of the appropriate authorities.  Id. ¶ 75.

### (2) *Criminal charges relating to alleged forgery*

On March 31, 2003, Frattare applied for, and received, a search warrant issued by District Justice Thomas S. Brletic of Magesterial District 05-2-13, which is located in McKeesport, Pennsylvania.  Id. ¶ 11.  The warrant authorized a search of the premises, as well as the seizure of computers and documents pertaining to correspondence allegedly signed in 1987 and purportedly sent to plaintiff by State Senator Albert V. Belan (the "Belan letter").  Id. ¶¶ 11, 18.  The Belan letter announced the discovery of 5,000 shares of AT&T stock being held by the Treasurer's Office's Bureau of Unclaimed Property for plaintiff pursuant to a 1981 civil lawsuit settlement involving the Reed, Smith, Shaw & McClay law firm.  Id. ¶ 17.  The Belan letter was found in 2002 by Nichelle Bonetti ("Bonetti"), a typist for plaintiff.  Id.  ¶ 19.  The affidavit of probable cause accompanying the search warrant stated that Bethany Wingerson ("Wingerson"), a former senatorial

assistant to Senator Belan, had indicated that the letter had not been prepared at Senator Belan's office.  Id. ¶ 28.  According to the affidavit, it was a logical inference that the letter was a forgery.  Id. ¶ 29, Ex. A., Affidavit of Probable Cause at 4.

On April 1, 2003, Frattare and O'Brien, who were accompanied by fellow agents Shawn Murphy ("Murphy"), Dennis Dansak ("Dansak"), and four other agents, secured and occupied the premises with the assistance of a municipal police department.  Id. ¶ 13. Ingress and egress to and from the premises was controlled by the agents, who turned away several people who were seeking to visit plaintiff.  Id. ¶ 14.  At least three agents entered Building No. 3 on 141 Wall Road.  Id. ¶ 15.  They were observed in the office of Julius Jones of Step-Van Services Co., Inc., when plaintiff entered the office.  Id.

Upon seeing plaintiff, the agents announced that their objective was to locate the original Belan letter, if any such letter existed, that was purportedly prepared by Senator Belan's office.  Id. ¶ 16.  The agents requested that plaintiff provide them with the original letter, inquiring whether it was the actual document allegedly signed in 1997.  Id. ¶ 18. Bonetti had found the document in 2002 while clearing off some shelves in Jones' office. Id. ¶ 19.

While the search was underway, Bonetti pulled into the USI Industrial Park.  Id. ¶ 20.  She was intercepted by agents who prevented her from having contact with plaintiff. Id.  Robert Welsh, a Jefferson Hills police officer, took measures to prevent plaintiff from having any contact with Bonetti.  Id. ¶ 21.  The agents collected all copies of the Belan

6

letter that they were able to find, as well as numerous pleadings in which plaintiff had referred to the discovery of the letter.  Id. ¶ 22.  Two computers were seized, along with several floppy discs.  Id. ¶ 23.  During the search, the agents extensively photographed and videotaped the premises, including plaintiff's Multi-Stage Liquid Elevator for gas and oil wells, a patented prototype which was outside of the office and located in a warehouse. Id. ¶ 24.  The agents insisted that plaintiff open a fireproof filing cabinet located in the warehouse, which operated as a locked safekeeping device.  Id. ¶ 26.  After plaintiff complied with this request, the cabinet was inspected by Frattare and Dansak.  Id.  No copies of the Belan letter were observed.  Id.  The agents observed silver coins, gold jewelry and a bag of federal reserve notes.  Id.  When the agents asked plaintiff why these materials were in the safe, plaintiff explained that they were used for bartering and trading. Id.  After spending several hours at the premises, the agents left without making any arrests.  Id. ¶ 27.

After the search of the premises, plaintiff wrote extensive letters to Frattare, Dansak, O'Brien and Fisher, attempting to explain his reasonable belief that the Belan letter referred to actual property to which he was entitled.  Id. ¶ 36.  Plaintiff received no correspondence in response to these letters.  Id.  A few weeks after the search, plaintiff filed a motion for return of property, "which requested that either the documents and equipment seized be returned or that duplicates be made of all documents impounded[,] as well as the documents electronically recorded within the hard drives of the computers

taken." Id. ¶ 37. "The motion further complained that the photographing and videotaping

of patented devices and processes was official action outside the scope of the warrant

issued." Id. Prior to the hearing on the motion for the return of property, which was

originally scheduled for May 1, 2003, plaintiff subpoenaed Frattare, Murphy and Dansak.

Id. ¶ 38.

Within a day of receiving legal process, Frattare and Murphy confronted Bonetti

outside of her residence, attempting to extract a confession that she had composed the

Belan letter at plaintiff's direction. Id. ¶ 39. When Bonetti declined to make the

confession, the agents "counseled her on the perils of prosecution for conspiracy[.]" Id.

When Bonetti proposed alternative theories as to the origins of the letter, the agents

expressed an "astonishingly dismissive attitude" toward considering theories that did not

implicate plaintiff as a wrongdoer. Id. On May 14, 2003, while the investigation into the

origins of the letter was underway, plaintiff filed a suit in federal court against Fisher,

Frattare and O'Brien, seeking an injunction against any threatened state prosecution in

connection with the alleged forgery. Id. ¶ 40; *Gagliardi v. Fisher, et al.*, No. 03-685

(W.D.Pa.).

On July 21, 2003, Frattare filed several criminal charges against plaintiff relating to

the Belan letter which included two second degree felony counts of forgery under 18 PA.

CONS. STAT. §§ 4101(a)(2) and 4101(a)(3) and one third degree felony count of attempted

theft by unlawful taking under 18 PA. CONS. STAT. § 3921(a).[1]   Compl. ¶ 41.  The next

day, plaintiff was arrested by Frattare and Murphy.  Id. ¶ 66.  District Justice Boyle

imposed a $30,000 straight cash bond at the arraignment.  Id.  Plaintiff was subsequently

imprisoned in the Allegheny County Jail for two days, July 22-24, 2003.  Id. ¶ 67.

The complaint filed by Frattare referred to 5,000 shares of AT&T stock worth

$179,000, but the copy of the Belan letter included with the search warrant application

completed by Frattare valued that purported AT&T stock at $175,900.  Id. ¶ 69.  In

addition, Frattare's complaint confused the date of the alleged offense as March 25, 2002.

Id. ¶ 70.  The agents did not interview the attorneys who worked for a law firm that had

filed lawsuits against AT&T, declining to follow leads in letters of inquiry which were

sent by plaintiff to two of those attorneys.  Id. ¶ 71.  The response of one attorney, which

was dated November 10, 2002, gave plaintiff no hint that the Belan letter may have been

forged.  Id.

Plaintiff obtained a change of magisterial venue for the criminal case from the

Pennsylvania Court of Common Pleas, Allegheny County, which reassigned the case to

District Justice Armand Martin.  Id. ¶ 77.  District Justice Martin served in Clairton,

Pennsylvania.  Id.  On October 27, 2003, after a preliminary hearing, plaintiff was

discharged from the charges of forgery and attempted theft by unlawful taking.  Id. ¶ 78.

---

[1]In the complaint, plaintiff alleges that Frattare improperly graded these charges.  Compl.
¶¶ 44-54 .  In this case, plaintiff, however, bases his argument upon the alleged lack of probable
cause to support the underlying charges and did not raise any issue with respect to the grading of
the offenses.  (Doc. No. 8 at 9-10).

District Justice Martin dismissed the charges because he found no evidence directly connecting plaintiff to the alleged forgery, even though there was evidence that the Belan letter had probably been forged.  Id. ¶ 79.  At the behest of Nye, Frattare refiled the same charges against plaintiff.  Id. ¶ 80.

### B.  Allegations against specific parties

### (1)  Michael Fisher

Almost immediately after the search of his premises, plaintiff complained to Fisher. Id. ¶ 175.  Fisher, who was the ultimate supervisor of all officers, employees and agents of the Attorney General's Office, never acknowledged plaintiff's correspondence.  Id. ¶ 176. As the "final authority for exercises of prosecutorial discretion[,]" Fisher either authorized the prosecution of plaintiff or abdicated his duty to abort it.  Id. ¶ 179.

### (2)  Kenneth Nye

Shortly after May 16, 1978, in his capacity as the District Supervisor for the Public Utilities Commission ("Commission"), Nye received a letter from Charles M. Byrnes ("Byrnes"), who was serving as a business agent for the General Teamsters Local Union 249.  Id. ¶ 180.  This correspondence sought to enlist the interest of the Commission is penalizing United States Industrial Fabricators ("USI") of Clairton, Pennsylvania, for hauling and warehousing materials from White Terminal, Inc.  Id. ¶ 181.  Nye sought to prosecute USI after receiving Byrnes' letter.  Id. ¶ 203.  Byrnes was later promoted to the executive leadership of General Teamsters Local Union 249.  Id. ¶ 204.

After establishing this relationship with Nye, Byrnes became implicated in a series of illegal activities related to the union.  Id. ¶ 205.  Because of his relationship with Nye, however, Byrnes was protected from prosecution.  Id. ¶ 206.  Nye discouraged Thomas Crawford and Alexander Lindsay, who were federal prosecutors, from prosecuting Byrnes.  Id. ¶¶ 207-08.  As the District Supervisor for the Commission, Nye was aware that plaintiff's litigation against AT&T involved matters that were settled in 1981 and matters that remained unsettled.  Id. ¶ 212.  Nye was aware that a writ of summons commencing formal litigation against AT&T had never been discontinued, thereby causing plaintiff to be confused.  Id. ¶ 213.

Since Nye was Frattare's immediate supervisor, plaintiff avers that Nye made the original decision to request a warrant to search plaintiff's premises.  Id. ¶ 182.  Nye delegated the assignment of actually seeking and procuring the search warrant to Frattare.  Id. ¶ 183.  It was Nye who made the decision to apply for a search warrant from District Justice Brletic.  Id. ¶ 184.

During the execution of the search, Nye maintained telephonic or supervisory contact with the agents who were at plaintiff's premises.  Id. ¶ 185.  He reviewed the property that was seized and collected by Frattare and O'Brien.  Id. ¶ 186.  Nye authorized O'Brien to review the byte stream of plaintiff's computer in a search for evidence of criminal activity.  Id. ¶ 187.  O'Brien was instructed by Nye to provide readable copies of documents generated by plaintiff's computers, regardless whether they were immediately

11

recognized as being connected with the investigation into the origins of the Belan letter. Id. ¶ 188.  Based upon his review of the property, Nye called plaintiff's activities to the attention of other governmental agencies.  Id. ¶ 189.

The search extended to two offices of Building No. 3 and a warehouse located outside.  Id. ¶ 191.  At the time of the warrant's execution, Nye had been familiar with the general layout of the USI Industrial Park for roughly twenty-five years.  Id. ¶ 192.  The Treasurer's Office did not specifically request that the Attorney General's Office prosecute plaintiff, opting instead to recommend only an investigation into the origins of the Belan letter.  Id. ¶¶ 193-94.  The decision to prosecute plaintiff was made by Nye.  Id. ¶ 195.  It was Frattare who actually implemented the prosecution.  Id. ¶ 196.  Following the dismissal of the charges after the preliminary hearing before District Justice Martin, Nye conferred with Senior Deputy Attorney General Anthony Krastek ("Krastek"), who ultimately prosecuted plaintiff.  Id. ¶ 197.  Nye subsequently authorized Frattare to refile the charges against plaintiff.  Id. ¶ 198.

Plaintiff avers that, but for the recommendations made by Nye, Frattare and Krastek would not have pursued the charges against plaintiff.  Id. ¶¶ 199-200.  Nye recommended that plaintiff be prosecuted without giving proper consideration to evidence that was discovered after the first preliminary hearing before District Justice Martin.  Id. ¶ 201.  Plaintiff further avers that Nye's recommendation that plaintiff be prosecuted was made in

retaliation for plaintiff's attempts in the late 1970s to expose AT&T's corporate fraud.  Id.
¶ 214.


### (3)  David Frattare

Frattare was advised that plaintiff tried to contact Senator Belan and Wingerson,
who purportedly prepared the Belan letter.  Id. ¶ 216.  Frattare did not compare the print
and style of the type used in the Belan letter with that used in other correspondence.  Id. ¶
218.  He commenced the prosecution against plaintiff before the results of laboratory
testing were available.  Id. ¶ 219.  He did not contact State Representative David K.
Levdanski or State Senator Sean Logan to confirm that plaintiff was seeking information
from them regarding property being held by the Treasurer's Office.  Id. ¶ 220.  Frattare
never inquired as to why Senator Belan was noncommittal about the source of the letter or
why he referred all related questions to Wingerson.  Id. ¶ 221.

With respect to the alleged underlying 1981 settlement, plaintiff avers that Frattare
made no attempt to uncover the precise circumstances surrounding the litigation or the
resulting expectations which may have led plaintiff to believe that the Belan letter was
genuine.  Id. ¶¶ 222-26.  With respect to the search of plaintiff's premises and the seizure
of his property, Frattare never clarified why he believed that he could use digital cameras
and a video camcorder to photograph exhaustively the interior of plaintiff's office and
warehouse.  Id. ¶ 227.  Frattare never explained why various patented devices and

unpatented phototypes of potentially useful industrial materials were photographed during the search.  Id. ¶ 228.

Although Frattare received the search warrant on March 31, 2003, and proceeded to conduct the search the next day, he took over three months to commence the prosecution. Id. ¶ 233.  Nevertheless, during this period of time, he never looked into the possibility that plaintiff was the victim of a hoax perpetrated by an alternative forger, nor did he engage in an investigation which might have implicated someone other than plaintiff in the alleged forgery.  Id. ¶¶ 230-50.  Frattare made no effort to inquire as to whether Fisher or Nye was acting to avenge plaintiff's support for Fiore in the early 1980s.  Id. ¶ 231. Without obtaining direct evidence regarding the origins of the Belan letter, Frattare pursued the prosecution against plaintiff despite indications that plaintiff was incapable of typing or using a word processor on his own.  Id. ¶¶ 238-39.  Frattare did not locate anyone associated with the Treasurer's Office who had indicated to plaintiff that the Belan letter had been forged.  Id. ¶¶ 244-49.  He effectively ratified Chapel's decision to allow plaintiff to be misled by a forger who was potentially operating in plaintiff's own office. Id. ¶ 250.

Using the Belan letter as a justification, Frattare searched through various documents and computer files.  Id. ¶ 252.  He did not explain a theory regarding the methodology allegedly used by plaintiff to commit the crime, thereby subjecting plaintiff to unfair surprise.  Id. ¶¶ 258-59.  Frattare made no effort to seek clarification in the wake

of a numerical discrepancy.  Id. ¶ 257.  Although the letter included within the search

warrant application made by Frattare for District Justice Brletic noted that the amount of

AT&T stock being held for plaintiff was valued at $175,900, Frattare's complaint against

plaintiff referred to 5,000 shares of AT&T stock valued at $179,000.  Id. ¶ 257.

### (4)  Jack O'Brien

O"Brien was responsible for analyzing the computers taken during the search of

plaintiff's premises.  Id. ¶ 260.  Plaintiff avers that O'Brien could have mitigated hardships

to plaintiff at the time of the seizure, but that he chose not to accommodate any of

plaintiff's federal litigation needs.  Id. ¶ 261.  Consequently, plaintiff was unable to access

a vast amount of documentation that was retrievable only on a computer.  Id. ¶ 262.  This

information was vital for plaintiff to respond to the demands of litigation that was pending

in both federal and state courts.  Id.  O'Brien gave Frattare and Nye access to plaintiff's

business and personal correspondence, along with that of various family members and

friends of plaintiff who were permitted to use the computers.  Id. ¶ 263.

### (5)  Barbara Hafer

Hafer's office was uncooperative with plaintiff when he sought to determine

whether he had a claim to 5,000 shares of lost stock.  Id. ¶ 264.  Employees of the

Treasurer's Office never told plaintiff that the Belan letter did not appear to be authentic.

Id. ¶ 265.  Plaintiff was told by the Treasurer's Office that no reference to the 5,000 shares

of stock had been located.  Id. ¶ 266.  As a result, plaintiff was lulled into a secure, but

false, belief that government officials were diligently searching for records related to the shares of stock referenced in the Belan letter.  Id.  Because nobody squarely confronted plaintiff about the possibility that the Belan letter was a forgery, plaintiff was dissuaded from investigating whether someone was trying to perpetrate a hoax at his expense.  Id. ¶ 267.

### (6)  Michael Chapel

On May 9, 2002, Chapel prompted Iris Klinepeter ("Klinepeter") of the Treasury Department's Office of Unclaimed Property (Administrative Office) to call plaintiff on the telephone for the purpose of inquiring about the original copy of the Belan letter.  Id. ¶¶ 268-70.  With Klinepeter's consent, Chapel monitored Klinepeter's conversation with plaintiff.  Id. ¶ 271.  Plaintiff was not advised that his conversation with Klinepeter was being monitored.  Id. ¶ 272.  Chapel did not seek the approval of the Pennsylvania Attorney General, the Dauphin County District Attorney or the Allegheny County District Attorney before recording or transcribing the conversation.[2]  Id. ¶ 274.

By May 9, 2002, the Treasurer's Office had begun to doubt the authenticity of plaintiff's claims regarding the 5,000 shares of stock referred to in the Belan letter.  Id. ¶ 277.  Although it was suspected that the letter was a forgery, no Treasurer's Office officials disclosed this suspicion to plaintiff.  Id. ¶ 278.  Klinepeter's call to plaintiff was not for the purpose of investigating plaintiff's claim.  Id. ¶ 279.  Instead, it was for the

---

[2]Plaintiff apparently makes this assertion for the purpose of alleging that Chapel's actions were not in compliance with 18 PA. CONS. STAT. § 5704(2)(ii).

purpose of obtaining information relevant to a criminal investigation.  Id.  Chapel (or one of his colleagues) subsequently referred the matter to the Attorney General's Office for a criminal investigation and possible prosecution.  Id. ¶ 280.  No serious "investigative consideration" was given to the possibility that plaintiff was the victim of another's forgery rather than a forger himself.  Id. ¶ 281.

### (7)  Offices of Attorney General and Treasurer

Plaintiff avers that the Attorney General's Office and the Treasurer's Office are liable for all the state tort law and state constitutional law violations alleged in the complaint.[3]  Id. ¶¶ 282, 284.

## III.  Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits.  Rather, when considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff.  U.S. Express Lines

---

[3]It is unclear to the court whether plaintiff intentionally omitted his federal claims from the specific allegations against the Attorney General's Office and the Treasurer's Office.  Compl. ¶¶ 282, 284.  Nevertheless, it appears that he may have done so.  In his brief, plaintiff does not take issue with defendants' contention that, under Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989), the Attorney General's Office and the Treasurer's Office are not "persons" within the meaning of 42 U.S.C. § 1983.  (Doc. No. 8 at 5).  Instead, he relies on Hafer v. Melo, 502 U.S. 21 (1991), for the proposition that he can sue Fisher and Hafer in their individual capacities for their official acts.  Id.  Consequently, the court does not construe plaintiff's complaint as asserting federal claims against the Attorney General's Office and the Treasurer's Office.

Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost, 1 F.3d at 183 (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d. ed. 1990)).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom, there is no reasonable reading upon which the plaintiff may be entitled to relief.  Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir. 2006).  Moreover, the court is under a duty to examine the complaint independently to determine if the factual allegations set forth could provide relief under any viable legal theory.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While this court is mindful that *pro se* plaintiffs are not held to as high of a standard as litigants that are represented by counsel, a *pro se* plaintiff must still plead the essential elements of his or her claim and is not excused from conforming to the standard rules of civil procedure.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel . . . .");  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a plaintiff, even though he is *pro se*, must set forth sufficient information that would allow the court to infer that, accepting the plaintiff's allegations as true, the defendants violated plaintiff's federal rights.  Kost, 1 F.3d at 183.

The Federal Rules of Civil Procedure do not require a plaintiff to set out in his complaint the specific facts that entitle him to relief, but rather only a "short and plain statement of the claim." FED. RULE CIV. P. 8(a)(2).  "Bald assertions" or "legal conclusions," however,  are not required to be credited in making the determination with respect to whether there is a set of facts on which to determine that a claim has been stated.  See Morse v. Lower Merion Sch. Dist, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

Where a plaintiff's complaint pleads facts beyond the requirements of Rule 8, his claim may be subject to dismissal if the specific facts alleged fail to provide relief under any viable legal theory.  Camero v. Kostos, 253 F.Supp. 331, 338 (D.N.J. 1966) (granting motion to dismiss where plaintiff's complaint pled facts demonstrating defendant was subject to immunity).  In addition, if a plaintiff's complaint does plead specific facts, those facts, taken as true for purposes of deciding the motion to dismiss, may create a defense to his claim.  Id.; see ALA, Inc. V. CCAir, Inc., 29 F.3d 855, 859 (3d Cir. 1994); 5 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1226 (3d ed. 2004).  In fact, where the plaintiff "chooses to plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court."  Jefferson v. Ambroz, 90 F.3d 1291, 1296 (7th Cir. 1996)(quoting Thomas v. Farley, 31 F.3d 557, 558-59 (7th Cir. 1994)).

Exhibits may be considered in deciding the motion to dismiss because "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment."  5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 376, 382-92 (3d ed. 2004).  Specifically, without converting the motion into a motion for summary judgment, the court may consider

> documents which are *attached* to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs arguments of counsel. . . . [D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading. . . . * * * * Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim*. . . .

Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002)(quoting 62 Fed. Proc., L.Ed. § 62:508); see U.S. Express Lines Ltd., 281 F.3d at 388 ("Although a district court may not consider matters extraneous to the pleadings, '*a document integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'") (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

## IV.   *Discussion*

Plaintiff's complaint contains fifteen counts.  Compl. ¶¶ 82-174.  He asserts claims on the following bases: (1) false arrest/false imprisonment; (2) malicious prosecution; (3)

bad faith prosecution; (4) vindictive prosecution; (5) abuse of process; (6) selective

prosecution; (7) retaliatory prosecution; (8) failure to train, supervise and discipline; (9)

negligent or intention infliction of emotional distress; (10) respondeat superior/vicarious

liability; (11) deprivation of civil rights under 42 U.S.C. § 1983; (12) deprivation of civil

rights secured by the Pennsylvania Constitution; (13) conspiracy; (14) spoilation of

evidence; and (15) invasion of privacy.  Id. ¶¶ 82-174.  In some instances, it is unclear to

the court which specific counts are intended to allege federal constitutional violations and

which counts are intended to allege only causes of action arising under Pennsylvania law.

As defendants point out (and as plaintiff appears to now concede), some of these state

causes of action either do not exist or have not been firmly established within the law of

Pennsylvania.  (Doc. No. 7 at 4; Doc. No. 8 at 3-4).

By reason of the court's conclusion that plaintiff's complaint does not state any

claim upon which relief can be granted under federal law, the court will decline to exercise

supplemental jurisdiction over plaintiff's causes of action arising under Pennsylvania law.

28 U.S.C. § 1367(c)(1), (3).  To the extent that the court discusses a particular count

within the context of this opinion, the asserted claim will be dealt with only insofar as it is

construed to state a claim under federal law.

### (A)  Federal constitutional claims under 42 U.S.C. § 1983

At the outset, it is worth noting that plaintiff's claims alleging violations of the

United States Constitution are cognizable only under 42 U.S.C. § 1983.  Smith v. School

21

District of Philadelphia, 112 F.Supp.2d 417, 430 (E.D.Pa. 2000).  Since no defendant in

this action is a federal official, plaintiff cannot assert a claim arising directly under the

Constitution.  Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388

(1971).  Although count 11 specifically mentions section 1983, the other counts alleging

federal constitutional violations do not.  Since the court must construe plaintiff's complaint

liberally for purposes of defendants' motion to dismiss, the court construes all counts in the

complaint alleging federal constitutional violations to be brought under section 1983.

Count 11 of plaintiff's complaint asserts claims under 42 U.S.C. § 1983, which

provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a judicial
> officer for an act or omission taken in such officer's judicial capacity,
> injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable.  For the purposes of this
> section, any Act of Congress applicable exclusively to the District of
> Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  Section 1983 does not create substantive rights.  Instead, it provides a

remedy to redress violations of federal law grounded in distinct federal constitutional

provisions or statutes.  Collins v. City of Harker Heights, 503 U.S. 115, 119

(1992)("Although the statute provides the citizen with an effective remedy against those

abuses of state power that violate federal law, it does not provide a remedy for abuses that

22

do not violate federal law[.]").  Consequently, plaintiff cannot recover under section 1983 without establishing an underlying violation of a federal constitutional or statutory provision.  "As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated."  County of Sacramento v. Lewis, 523 U.S. 833, 841-42 n.5 (1998).

Plaintiff's complaint alleges violations of the First, Fourth, Fifth and Fourteenth Amendments.[4]  Compl. ¶¶ 136-51.  Since various allegations are made against different defendants, the court will proceed to address these claims only with respect to those defendants which can be held liable under the circumstances of the present case.

### (1) Liability of the Attorney General's Office and the Treasurer's Office

Defendants contend that the Attorney General's Office and the Treasurer's Office are not "persons" within the meaning of section 1983.  In support of their position, they rely on the United States Supreme Court's decision in Will v. Michigan Department of

---

[4]For the sake of clarity, the court will refer to the claims as asserting violations of the First, Fourth and Fourteenth Amendments separately, without directly mentioning the Fourteenth Amendment when alleged violations of the First and Fourth Amendments are being discussed. When state actors violate the First or Fourth Amendment rights of an individual, they actually violate the Due Process Clause of the Fourteenth Amendment, which incorporates those rights. United States v. Georgia, 546 U.S. 151, 155 (2006)(explaining that a complaint alleging a violation of the Eighth Amendment properly alleged a violation of the Fourteenth Amendment). Since the only Fifth Amendment violation alleged by plaintiff arises under the Due Process Clause, which limits *federal* action rather than *state* action, there is no need for the court to independently analyze plaintiff's Fifth Amendment claim.  Any due process violation alleged in plaintiff's complaint could implicate only the Due Process Clause of the *Fourteenth Amendment*, since defendants are *state* actors rather than *federal* actors.  Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207, n. 4 (10th Cir. 2005).

State Police, 491 U.S. 58 (1989), in which the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71. Although plaintiff argues that he can sue Fisher and Hafer in their individual capacities for actions taken by them in their official capacities, he does not appear to argue that the Attorney General's Office and the Treasurer's Office are "persons" subject to liability under section 1983. This apparent concession by plaintiff, coupled with the precedential holding in Will, obviates the need for an extensive analysis of this issue. Moreover, plaintiff's complaint only alleges that these offices are liable "for all state tort law and state constitutional law claims in this matter." Compl. ¶¶ 282, 284. Consequently, it does not appear that plaintiff intended to pursue claims against these offices under section 1983. Since the court will decline to exercise supplemental jurisdiction over plaintiff's claims arising under Pennsylvania law, there is no need for the court to consider whether these offices may be held liable under Pennsylvania law for the conduct alleged in plaintiff's complaint. It suffices to say that they cannot be held liable under section 1983.

### (2)  Liability of Fisher and Hafer

In support of his position that he can sue Fisher and Hafer in their individual capacities for actions taken by them in their official capacities, plaintiff relies on Hafer v. Melo, 502 U.S. 21 (1991). In Hafer, the Supreme Court held that state officials, sued in their individual capacities, are "persons" within the meaning of section 1983. Hafer 502 U.S. at 31. The Court further noted that state officials are not absolutely immune from

personal liability under section 1983 solely because of the "official" nature of their acts.

Id.

Defendants do not take issue with plaintiff's reliance on Hafer. Instead, they argue that plaintiff does not sufficiently allege personal involvement on the part of Fisher and Hafer in the events complained about to warrant personal liability. (Doc. No. 7 at 8). In Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988), the United States Court of Appeals for the Third Circuit made clear that a plaintiff, in order to pursue a claim against an individual defendant under section 1983, must allege that the particular defendant was personally involved in the alleged wrongdoing. Id. at 1207. Section 1983 liability cannot be based solely upon the basis of respondeat superior. Id. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. The court of appeals commented on this principle further in Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005), stating that "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho, 423 F.3d at 353.

With respect to Hafer, plaintiff fails to allege personal involvement of any kind. He alleges only that the Treasurer's Office was uncooperative in helping him in his efforts to uncover the perpetrator of the alleged forgery, kept him "in the dark" about the Belan letter's lack of authenticity, lulled him into a false sense of security about the efficiency of an ongoing investigation, and dissuaded him (by the foregoing omissions)

25

from conducting his own investigation as to whether someone else had perpetrated a hoax at his expense.  Compl. ¶¶ 264-67.  These allegations do not even establish that Hafer was *aware* of plaintiff's situation, let alone that she was personally involved in it.  Consequently, it is clear that plaintiff's complaint states no claim against Hafer under section 1983.

Plaintiff's allegations against Fisher fail for similar reasons.  Plaintiff's only basis for asserting a claim against Fisher, on the basis of his *personal involvement*, is the allegation that Fisher failed to prevent his subordinates from pursuing the investigation into the alleged forgery after receiving correspondence from plaintiff about the matter.  Id. ¶¶ 175-79.  Plaintiff alleges that Fisher "either authorized the baseless prosecution" or "utterly abdicated a duty to abort it."  Id. ¶ 179.  This allegation is not based upon any personal direction or  knowledge of Fisher relating to the investigation or prosecution.  Instead, plaintiff bases this allegation solely upon Fisher's status as the "ultimate supervisor for all officers, employees and agents of the Pennsylvania Office of Attorney General," and his inattentiveness to plaintiff's correspondence.  Id. ¶ 176.  The allegation regarding the "baseless" nature of the prosecution is simply a "bald assertion," and the court is not required to credit it in deciding the instant motion to dismiss.  Evancho, 423 F.3d at 354.  Furthermore, even if the court were to indulge plaintiff's bald assertion and assume *arguendo* that the prosecution was baseless, no allegation is made which personally implicates Fisher in the decision to proceed with, or the failure to halt, any

26

particular action taken by his subordinates along the way.  With respect to Fisher, plaintiff's allegations are woefully insufficient to satisfy the standard discussed in Rode and Evancho.  Id. at 353; Rode, 845 F.2d 1195.

Plaintiff's allegations, as they relate to Hafer and Fisher, amount to "nothing more than conclusory, boilerplate language insufficient to show that [he] is or may be entitled to relief if [his] allegations are proven."  Evancho, 423 F.3d at 354-55.  Accordingly, plaintiff's complaint does not state a claim against Hafer or Fisher under section 1983.[5] The dismissal of the claims against Hafer or Fisher in other circumstances might be without prejudice in order for a plaintiff to amend his complaint to include the necessary allegations, provided that there were facts justifying an amendment.  Here, given the court's conclusions below, any amendment would be futile.  Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000)(defining "futility" to mean that a complaint, as amended, would fail to state a claim upon which relief can be granted).  Therefore, the claims against Hafer and Fisher must be dismissed with prejudice.

### (3)  Fourth Amendment

Plaintiff alleges that his Fourth Amendment rights were violated.  Compl. ¶¶ 146-47.  His Fourth Amendment claim under count 11 focuses on the legality of the

---

[5]The court acknowledges defendants' argument that plaintiff failed properly to allege personal involvement on the part of O'Brien and Chapel.  (Doc. No. 7 at 7-9).  Nevertheless, at this stage, the court must liberally construe plaintiff's complaint.  Since there are some allegations of peripheral involvement by these individuals, the court will address plaintiff's section 1983 claims against them on the facts alleged in the complaint.

underlying search warrant and its execution at his premises.  Id.  In addition, counts 1, 2, 3, 4 and 6, read broadly, could be reasonably construed to implicate Fourth Amendment concerns.[6]  These counts allege false arrest/false imprisonment, malicious prosecution, bad faith prosecution, vindictive prosecution and selective prosecution.[7]  As defendants point out, some of these alleged claims do not appear to be recognized by the governing law, whether it be federal constitutional law or Pennsylvania law.  As noted earlier, however, the court expresses no opinion as to whether any count contained in plaintiff's complaint states a valid cause of action under Pennsylvania law.  The court addresses these counts only insofar as they are construed to allege federal constitutional violations.  To the extent that these counts are construed to allege violations of more than one federal constitutional provision, they will be discussed in each relevant portion of the opinion.

   With respect to the Fourth Amendment, the court does not view plaintiff's counts alleging bad faith prosecution, vindictive prosecution and selective prosecution as alleging potential constitutional violations separate and distinct from the malicious

_____

   [6]In count 5, plaintiff stated: "Irrespective of whether a lack of probable cause exists and whether a favorable termination of an underlying prosecution exists, abuses of criminal process are actionable if the process is utilized for a perverted purpose."  Compl. ¶ 103.  Given the language indicating that the issue of probable cause is irrelevant to the question whether he states a claim under an "abuse of process" theory, it is clear that count 5 is not based upon the Fourth Amendment.  Furthermore, in his brief, plaintiff notes that "abuse of process and malicious prosecution are distinct torts."  (Doc. No. 8 at 3).  Consequently, the court construes count 5 to allege only an abuse of process claim arising under Pennsylvania law.

   [7]Count 7 alleges a claim for retaliatory prosecution.  Compl. ¶¶ 109-10.  To the extent that this claim is brought pursuant to section 1983, it appears to be based on the First Amendment.  For this reason, the court will deal with it in the portion of this opinion discussing plaintiff's First Amendment claims.

prosecution allegation contained in count 2.  Therefore, the court will not separately

address them.  After pointing out that malicious prosecution and abuse of process are

distinct torts, plaintiff concedes that "some of the other variants of retaliatory or

discriminatory prosecution may be redundant."  (Doc. No. 8 at 4).  For this reason, there

is no need for the court repeatedly to analyze the same claim under the Fourth

Amendment rubric merely because it has a different label.  Viewed through this prism,

plaintiff's complaint raises three issues that could reasonably be construed to implicate

the Fourth Amendment.

### (a)  The Particularity of the Warrant

Since section 1983 itself creates no substantive rights, the court must begin the

analysis by identifying "the exact contours of the underlying right said to have been

violated."  Lewis, 523 U.S. at 841-42 n.5.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. CONST. amend. IV.  In Groh v. Ramirez, 540 U.S. 551 (2004), the United States

Supreme Court explained that, with respect to a warrant, the Fourth Amendment imposes

four requirements.  To comport with the Fourth Amendment, a warrant must: (1) be based

on probable cause; (2) be supported by a sworn affidavit; (3) describe particularly the

place of the search; and (4) describe particularly the persons or things to be seized.  Id. at 557.

In count 11 of the complaint, plaintiff alleges that the affidavit of probable cause accompanying the application for the warrant to search his premises "lacked particularity in restricting the scope of the search made to strictly lawful concerns."  Compl. ¶ 146.  He further alleges that this lack of "particularity" resulted in an unreasonable search.  Id.  At the outset, it is worth noting that the particularity requirements of the Fourth Amendment apply to the warrant itself.  Groh, 540 U.S. at 557 ("The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity.")(emphasis in original).  Where there is no language in the warrant specifically incorporating other documents by reference, a defect in the warrant itself cannot be excused merely because the application specifies with particularity the place of the search and the persons or things to be seized.  Id. at 557-58 ("We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents.  Indeed, most courts of appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.").[8]  Consequently, the court

---

[8]United States v. McGrew, 122 F.3d 847, 849-50 (9th Cir. 1997); United States v. Williamson, 1 F.3d 1134, 1136, n.1 (10th Cir. 1993); United States v. Blackeney, 942 F.2d 1001, 1025-26 (6th Cir. 1991); United States v. Maxwell, 920 F.2d 1028, 1031 (D.C.Cir. 1990); United States v. Curry, 911 F.2d 72, 76-77 (8th Cir. 1990); United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980).

must examine the warrant itself to determine whether plaintiff's particularity argument

has merit.

The warrant, in pertinent part, stated as follows:

Seize and examine all documents, files, facsimiles, correspondence, and photo static copies between John Gagliardi and the Pennsylvania Department of Treasury, the Pennsylvania Bureau of Unclaimed Property, the State Senatorial Office of former State Senator Albert V. Belan, 45th Senatorial District, the law firm of Reed, Smith, Shaw, and McClay, AT&T, and EquiServe (AT&T stock transfer agent).

All of the above records, whether stored on paper, computers, computer disks, magnetic tape, programmable instruments such as Palm Pilots and similar devices, telephones and "electronic address books", or any other device capable of storing the described records electronically.

Based upon your Affiant's knowledge, training, and experience, your Affiant knows that it is common practice to record and store types of records being sought on computers and other storage devices.

Seize and examine computers (including desktop computers, file servers, laptop computers, other portable computers) and electronic storage devices such as hard drives, floppy disks, ZIP disks, data tapes, optical storage devices, personal digital assistants (PDA) such as Palm Pilots or other devices capable of storing data electronically; peripheral input/output devices such as keyboards, printers, facsimile machines, optical readers, and related communication devices such as modems; together with system documentation, operating logs and documentation, software and instruction manuals.

(Doc. No. 1, Ex. A, Pt. 3).  The court notes that the warrant also specified, in great detail,

the particular building and particular entrances to be accessed during the search.  Id.

Given the detailed nature of the warrant, the court concludes that plaintiff's generalized

complaint that the warrant failed to comply with the Fourth Amendment's particularity requirements does not state a claim upon which relief can be granted.

In making this determination, the court is mindful of the purpose for which the search was conducted (i.e., the collection of evidence related to the possible forgery). Since the equipment searched and seized was reasonably believed to have been used by plaintiff in perpetrating a forgery, the warrant was particularly tailored to "the object of the search and the places in which there [was] probable cause to believe that it may be found." Maryland v. Garrison, 480 U.S. 79, 84 (1987)(quoting United States v. Ross, 456 U.S. 798, 824 (1982)). The purpose of the Warrant Clause is to prevent general searches. Garrison, 480 U.S. at 84. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Id.

It cannot be said that the scope of the search at issue in this case, as defined in the warrant, exceeded reasonable bounds with respect to the objective of locating evidence related to the preparation or origin of a letter that was believed to have been forged. Id. at 84-85("Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless

search of a suitcase." (quoting <u>Ross</u>, 456 U.S. at 824)).[9]  So long as there exists "a nexus

between the evidence to be seized and the alleged offenses," a warrant is not invalid

merely because it authorizes a search for a large amount of documents and records.

<u>United States v. Yusuf</u>, 461 F.3d 374, 394 (3d Cir. 2006)(quoting <u>United States v.</u>

<u>American Investors of Pitts.</u>, 879 F.2d 1087, 1105-06 (3d Cir. 1989).  "The breadth of

items to be searched depends upon the particular factual context of each case" and the

"information available to the investigating agent that could limit the search at the time the

warrant application is given to the magistrate." <u>Id.</u> at 395.  Plaintiff's complaint, which

includes extensive allegations of facts, even accepting those facts as true and drawing all

reasonable inferences from those facts in favor of plaintiff, does not state a claim entitling

plaintiff to relief under any viable legal theory relating the scope of the search.

Accordingly, the court must dismiss count 11 of the complaint, insofar as it alleges a

violation of the Fourth Amendment, with prejudice.

---

[9]Count 11 of plaintiff's complaint alleges that the warrant lacked the particularity required by the Fourth Amendment. Compl. ¶ 146.  This allegation is not based upon a lack of probable cause, but rather on a lack of particularity.  For this reason, the court focuses on the language of the warrant.  The issue of probable cause itself will be addressed within the context of plaintiff's false arrest and malicious prosecution claims.  These claims, which are contained in counts 1 and 2 of the complaint, will be addressed only insofar as they are based upon the Fourth Amendment.  Since count 11 is the only count which appears to be based exclusively on the United States Constitution, the court has chosen to address it (in relation to the Fourth Amendment) before discussing counts 1 and 2.

### (b) False Arrest

Count 1 of the complaint alleges a claim for false arrest/false imprisonment. Compl. ¶¶ 82-88.  As the United States Supreme Court recently noted, false arrest is itself a form of false imprisonment.  Wallace v. Kato, 127 S.Ct. 1091, 1095 (2007)("False arrest and false imprisonment overlap; the former is a species of the latter.").  For purposes of clarity, the court will refer to count 1 as a "false arrest" claim, since that is the term employed by the United States Court of Appeals for the Third Circuit in the Fourth Amendment context.  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).  As noted earlier, the court will address this count only insofar as it alleges a violation of the Fourth Amendment, leaving the question whether count 1 properly states a violation of Pennsylvania law to the Pennsylvania courts.

"The essential predicate for a § 1983 claim for unlawful arrest is the absence of probable cause."  Forest v. Pawtucket Police Department, 290 F.Supp.2d 215, 230 (D.R.I. 2003).  In order to succeed in a Fourth Amendment action brought under section 1983 for a false arrest made pursuant to a warrant, a plaintiff must show, by a preponderance of the evidence: (1) that the officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant; and (2) that the statements or omissions were material, or necessary, to the finding of probable cause.  Wilson, 212 F.3d at 786-87.  "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable

34

person would know that a judge would want to know." Id. at 783.  "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Id.  "When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit." Yusuf, 461 F.3d at 384.  "In contrast, when faced with an omission, the court must remove the 'falsehood created by an omission by supplying the omitted information to the original affidavit.'" Id., (quoting Sherwood v. Mulvihill, 113 F.3d 396, 400 (3d Cir. 1997)).

Plaintiff makes no allegation that anyone in particular was responsible for a false statement or a misleading omission.  Compl. ¶¶ 180-263.  He concedes – at least for purposes of an *arguendo* assumption – that the Belan letter was a forgery.  Id. ¶ 30.  After making that concession, he claims that the evidence before defendants was "equally consistent" with the possibility that he was the victim of a hoax, fraud, or joke designed to discredit him.  Id. ¶ 32.  Consistent with this allegation, plaintiff faults defendants for not looking into the "equal possibility" that he was being victimized or defrauded by somebody else – the *real* forger.[10]  Id. ¶ 33.  These allegations, assumed to be true for purposes of the instant motion to dismiss, do not state a claim for which relief can be granted with respect to plaintiff's false arrest claim under the Fourth Amendment.

---

[10]Plaintiff appears to base his claim against Chapel on this theory.  He alleges that Chapel gave "no serious investigative consideration" to the possibility that the perpetrator of the forgery was somebody else.  Compl. ¶ 281.

It is clearly established that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).  The United States Court of Appeals for the Third Circuit has cautioned that probable cause determinations should not be overly compartmentalized.  Yusuf, 461 F.3d at 390 (citing In re Application of Adan, 437 F.3d 381, 397 n.7 (3d Cir. 2006)).

> The probable cause determination is to be made only after considering the totality of the circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences.

Yusuf, 461 F.3d at 390.  For probable cause to exist, the officers did not need proof of each element of the crime of forgery.  Instead, they merely needed to have a reasonable belief that plaintiff had probably committed the offense.  Thacker v. City of Columbus, 328 F.3d 244, 256 (6th Cir. 2003).  Obviously, the officers cannot determine the existence of such a probability without reference to the elements of the charged crime.  The absence of evidence with respect to a particular element, i.e., intent, however, does not eliminate the existence of probable cause, assuming that the totality of the circumstances are such that a reasonable inference with respect to the existence of a particular element can be made.

The crux of plaintiff's argument, with respect to the alleged lack of probable cause, is that there was no proof that he was the forger.  He does not dispute that the

36

Belan letter was, in fact, a forgery. Compl. ¶ 30. Furthermore, the affidavit of probable cause set forth evidence (which plaintiff does not appear to dispute) establishing that a forgery had been committed. (Doc. No. 6, Ex. 1). Plaintiff's entire argument regarding the issue of probable cause is that the evidence was "equally consistent" with the possibility that he was the victim of a hoax or fraud, and that defendants failed to consider the "equal possibility" that the forger was someone other than plaintiff. Compl. ¶¶ 32-33. These allegations, however, do not negate the existence of probable cause.[11] By referring to his alternative theory as "equally consistent" with the evidence, plaintiff does not dispute that his own guilt was, at least, an "equal possibility" from the perspective of the arresting officers. Id. ¶¶ 32-33. Under the facts alleged, plaintiff is not claiming that any defendant omitted particular information that supported his theory that someone else was the forger, or that otherwise decreased the probability that he was the forger himself.

---

[11]The court acknowledges that the question of probable cause is generally one for the jury. Merkle v. Upper Dublin School District, 211 F.3d 782, 790 (3d Cir. 2000)("Accordingly, a reasonable jury could not find that Hahn lacked knowledge of sufficient facts to establish probable cause to arrest Merkle for the crime of theft by unlawful taking."). Since the instant case comes before the court on a motion to dismiss, the allegations contained in the complaint are assumed to be true. Anza v. Ideal Steel Supply Corp., 126 S.Ct. 1991, 1994 (2006). Plaintiff bases his arguments regarding lack of probable cause on the "equal possibility" that someone else had committed the forgery. Compl. ¶ 33. This allegation falls short of what plaintiff would need to establish that his arrest was unsupported by probable cause. Consequently, defendants' motion to dismiss must be granted with respect to this issue. No factual finding that someone else may have committed the forgery would negate the existence of probable cause in the absence of specific knowledge on the part of defendants that someone else was involved, which is something that plaintiff does not allege.

Plaintiff's argument illustrates that he fundamentally misunderstands the nature of the probable cause inquiry.  The United States Supreme Court has defined "probable cause" in relation to "a fair probability."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  Addressing probable cause in an arrest scenario, the United States Court of Appeals for the First Circuit, in Samos Imex Corporation v. Nextel Communications, Inc., 194 F.3d 301 (1st Cir. 1999), explained:

> The phrase "probable cause" is used, in the narrow confines of Fourth Amendment precedent, to establish a standard less demanding than "more probable than not."  For example, arrests–made long before all proof is assembled for a trial–can be justified as based on probable cause by showing a reasonable basis for belief that a suspect committed a crime; in many cases such a basis exists without a 50 percent-plus likelihood that the suspect is guilty.

Samos, 194 F.3d at 303.

Plaintiff does not deny that defendants had a "reasonable basis" for believing that he committed the offenses for which he was charged.  Instead, he asserts that the same evidence could have supported a "reasonable basis" for believing that someone else was the forger.  Even if that is true, the existence of probable cause was not negated. "Probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  "The validity of an arrest is not

dependent on whether the suspect actually committed any crime, and 'the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant.'" Johnson, 332 F.3d at 211 (quoting DeFillippo, 443 U.S. at 36).  Consequently, the allegations contained in plaintiff's complaint, which are assumed to be true, and drawing all reasonable inferences from those allegations in favor of plaintiff establish that plaintiff cannot set forth a claim relating to the lack of probable cause for plaintiff's arrest.

Since plaintiff made detailed factual allegations which do not establish a lack of probable cause for the arrest, his false arrest claim under section 1983 must be dismissed. Walker v. City of Anniston, 140 F.Supp.2d 1249, 1257 (N.D.Ala. 2001).  Accordingly, the court must dismiss Count 1 of the complaint, insofar as it is based upon an asserted Fourth Amendment violation, with prejudice.  Plaintiff does not state a claim upon which relief can be granted with respect to his Fourth Amendment false arrest claim against Nye and Frattare.  Compl. ¶ 82.

### (c)  Malicious Prosecution

Count 2 of plaintiff's complaint asserts a "malicious prosecution" claim.  Id.  ¶¶ 89-94.  The court will address this count only to the extent that it is based upon the Fourth Amendment.

The United States Supreme Court has never defined the contours of a section 1983 claim for malicious prosecution under the Fourth Amendment.  Wallace, 127 S.Ct. 1091, 1096 n.2; Albright v. Oliver, 510 U.S. 266, 270-71, 275 (1994)(plurality opinion).  The

United States Court of Appeals for the Third Circuit, however, has recognized the existence of that kind of claim.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  To prevail on a Fourth Amendment malicious prosecution action under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005)(citing Estate of Smith, 318 F.3d at 521).

The court has already determined that the detailed facts pleaded by plaintiff and all reasonable inferences drawn from those facts in favor of plaintiff fail to set forth a claim that plaintiff's arrest was not supported by "probable cause" within the meaning of the Fourth Amendment.  The existence of probable cause to arrest, however,  does not foreclose plaintiff's malicious prosecution claim.  In order to evaluate probable cause within the malicious prosecution context, the court must look individually at each charged offense.  Johnson v. Knorr, 477 F.3d 75, 2007 U.S. App. LEXIS 3242, at 27 (3d Cir.)("Accordingly, although the district court properly dismissed Johnson's claim of false arrest based on the existence of probable cause to arrest Johnson for terroristic threats, the court erred in dismissing his claim of malicious prosecution inasmuch as the

court did not consider whether there was probable cause to initiate the criminal

proceedings with respect to the remaining offenses.").

With those principles in mind, the court now turns to the specific offenses for

which plaintiff was ultimately prosecuted.  Pennsylvania law defines the offense of

forgery as follows:

§ 4101.  Forgery

(a) OFFENSE DEFINED.–A person is guilty of forgery if, with intent to
defraud or injure anyone, or with knowledge that he is facilitating a fraud or
injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any
writing so that it purports to be the act of another who did not authorize that
act, or to have been executed at a time or place or in a numbered sequence
other than was in fact the case, or to be a copy of an original when no such
original existed; or

(3) utters any writing which he knows to be forged in a manner specified in
paragraphs (1) or (2) of this subsection.

18 PA. CONS. STAT. § 4101.  Plaintiff was also charged with *attempted* theft by unlawful

taking, which is defined under Pennsylvania law as follows:

§ 3921.  Theft by unlawful taking or disposition

(a) MOVABLE PROPERTY.–A person is guilty of theft if he unlawfully
takes, or exercises unlawful control over, movable property of another with
intent to deprive him thereof.

(b) IMMOVABLE PROPERTY.–A person is guilty of theft if he
unlawfully transfers, or exercises unlawful control over, immovable

property of another or any interest therein with intent to benefit himself or another not entitled thereto.

18 PA. CONS. STAT. § 3921.

For the reasons stated earlier, the facts asserted in the complaint and all reasonable inferences drawn from those facts in favor of plaintiff establish that Nye and Frattare had probable cause to believe that plaintiff had committed forgery within the meaning of 18 PA. CONS. STAT. §§ 4101(a)(2) and 4101(a)(3). Indeed, plaintiff does not dispute that a forgery was committed, contending only that the forger was someone other than him. Compl. ¶¶ 30-33. Given the "totality of the circumstances," Nye and Frattare were able to draw a reasonable inference regarding the existence of the element that plaintiff alleges was lacking (i.e., "intent" or "knowledge").

Plaintiff attacks the charge of attempted theft by unlawful taking on the ground that defendants' pursuit of the charge was inconsistent with 18 PA. CONS. STAT. § 905. Id. ¶ 54. This statutory provision provides:

§ 905. Grading of criminal attempt, solicitation and conspiracy

(a) GRADING.–Except as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy.

(b) MITIGATION.–If the particular conduct charged to constitute a criminal attempt, solicitation or conspiracy is so inherently unlikely to result or culminate in the commission of a crime that neither such conduct nor the actor presents a public danger warranting the grading of such offense under this section, the court may dismiss the prosecution.

42

18 PA. CONS. STAT. § 905.  Plaintiff advances his argument with the following statement:

"At no step in the process of evaluating the claim was the State Treasurer ever close to

paying your Plaintiff $175,900.00 in escrowed property since the escrow itself could not

be found."  Compl. ¶ 54.  His argument is apparently based on section 905(b).

　　　With respect to his malicious prosecution claim under section 1983, this argument

is unavailing for three reasons.  First of all, the statute, by its very terms, speaks of the

circumstances in which a court may *dismiss* a prosecution that has already been brought.

It says nothing about whether probable cause exists to bring the charges in the first place.

Moreover, the word "may" implies that the court's decision to dismiss such a prosecution

is discretionary, and that the presence of a mitigation-causing factor does not negate the

establishment of the elements of the crime for purposes of the initiation of criminal

proceedings.  Commonwealth v. Williams, 828 A.2d 981, 988 (Pa. 2003)(explaining that

the use of the word "may" in a statute implies the existence of discretion).  Consequently,

the court must conclude as a matter of law that Nye and Frattare had probable cause to

initiate an attempted theft by unlawful taking charge even if it is assumed *arguendo* that

there was cause for dismissal under section 905(b).

　　　Plaintiff's Fourth Amendment malicious prosecution claim for the attempted theft

by unlawful taking charge fails for yet another reason grounded in Pennsylvania law.  For

purposes of this analysis, the court will assume *arguendo* that the presence of a

mitigation-causing factor would negate the existence of an element of the crime, thereby

compromising defendants' assertion that they had probable cause to pursue the charge.  It is clear that plaintiff misconstrues section 905(b).  While it is true that the property referred to in the Belan letter did not exist, the impossibility of ultimate success does not necessarily warrant dismissal under section 905(b).  The nonexistence of the property in no way diminished the "public danger" that the forger (whether it was plaintiff or somebody else) posed to the community.  In Commonwealth v. John, 854 A.2d 591 (Pa.Super.Ct. 2004), the Pennsylvania Superior Court determined that dismissal under section 905(b) was not warranted where a defendant was charged with soliciting a thirteen-year-old girl for sex, even though the actual person who was in contact with him was an undercover agent posing under the alias of "Missy."  John, 854 A.2d at 592, 597. The superior court explained:

> Appellant insists that because there was no "Missy," his conduct was inherently unlikely to result in the commission of a crime and so dismissal was proper.  However, this argument ignores the statutory requirements for dismissal, which explicitly include a finding that the actor does not present a public danger.  The danger appellant presents is clear.  As the trial court aptly noted, "the fact that a criminal purpose would not have been accomplished because the 'victim' was not, in fact, a child, does not diminish or vitiate [appellant's] capacity to do wrong or his intent to influence someone to engage in a criminal act.  Moreover, the record (as evinced by the email trail and the [appellant's] act of coming quite a distance to this Commonwealth to meet his child victim) plainly demonstrates that [appellant] fully intended to accomplish his forbidden motives."  Trial Court Opinion, 12/30/03 at 10.
> Appellant sought to have sex with a 13 year-old girl, suggested various sexual scenarios the two would explore, sent pornographic materials, supplemented by his own instructions, on how the sexual contact would proceed and made specific arrangements to meet the girl.  He then traveled from his place of business in Delaware in the hope that all of this

44

> preparation would culminate in the sexual relations he had carefully
> planned.  The conclusion that appellant presents a public danger, and so is
> not entitled to dismissal pursuant to § 905, is not erroneous.

Id. at 597.  Thus, plaintiff's apparent belief that section 905 should have prevented Nye

and Frattare from charging him with attempted theft by unlawful taking is not based on a

correct understanding of Pennsylvania law.

Even if the court were to assume *arguendo* that Nye and Frattare did *not* have

probable cause to initiate attempted theft by unlawful taking charges against plaintiff,

plaintiff's Fourth Amendment malicious prosecution claim would fail for yet another

reason.  The fifth element of the claim requires plaintiff to show that he "suffered a

deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding."  DiBella, 407 F.3d at 601.  Generally speaking, defendants do not dispute

that plaintiff can establish the fifth element, explaining that only the third and fourth

elements (i.e., lack of probable cause and a malicious motive on the part of Nye and

Frattare) are at issue.  (Doc. No. 7 at 10).  Nevertheless, since the court has already

determined that the facts asserted by plaintiff and all reasonable inferences drawn from

those facts in favor of plaintiff establish that Nye and Frattare had probable cause to

initiate criminal proceedings against plaintiff for forgery, plaintiff cannot prevail in a

malicious prosecution action with respect to the attempted theft by unlawful taking charge

without showing that this charge "resulted in additional restrictions on his liberty beyond

those attributable to the prosecution on the [forgery] charges for which there was

45

probable cause." Johnson, 477 F.3d 75, 2007 U.S. App. LEXIS 3242, at 27 n.14. Based upon the specificity of the facts alleged, plaintiff cannot establish that his liberty was restricted to a greater degree because of the attempted theft by unlawful taking charge than it would have been had he only been charged with forgery. Compl. ¶¶ 44-67. Accordingly, it is clear to the court, for all of these reasons, that he cannot state a claim for malicious prosecution under the Fourth Amendment.

Plaintiff's complaint fails to state a claim for a violation of the Fourth Amendment and the specificity of the factual allegations necessitate a conclusion that it would be futile to amend the complaint with respect to the Fourth Amendment claims. Consequently, the court must dismiss, with prejudice, counts 1, 2, 3, 4, 6 and 11 to the extent that they are brought under section 1983 for alleged Fourth Amendment violations.

### (4) First Amendment

Plaintiff alleges a violation of the First Amendment in counts 7 and 11 of the complaint. Compl. ¶¶ 109-10, 142-45. Count 7 is based on a retaliatory prosecution theory. Id. ¶¶ 109-10. Plaintiff also alleges a violation of the First Amendment in count 12, which asserts a more generalized constitutional claim under section 1983. Id. ¶¶ 142-45.

Defendants appear to view plaintiff's First Amendment claims as being only against Nye. A close reading of the complaint, however, indicates that the allegations of a First Amendment violation may be based upon the allegations related to Frattare's

actions as well.[12]  Compl. ¶¶ 38-39.  The allegation against Nye, with respect to the First

Amendment retaliation claim, appears to be based upon his alleged desire to avenge

plaintiff's assistance to Fiore in the early 1980s.  Id. ¶¶ 34-35.  The First Amendment

allegation against Frattare (if plaintiff is making a First Amendment allegation against

Frattare) can only be based upon Frattare's reaction to plaintiff's subpoena.  Id. ¶¶ 38-39.

Plaintiff alleges that, after he subpoenaed Frattare, Murphy and Dansak to appear at the

"return of property hearing," they attempted to extract a confession from Bonetti

regarding the alleged forgery.  Id. ¶ 39.  The court will proceed to evaluate plaintiff's

First Amendment claims as if he is asserting those claims against both Nye and Frattare.

     In order to establish a retaliation claim under the First Amendment, a plaintiff must

prove: (1) conduct or speech protected by the First Amendment; (2) retaliatory action

sufficient to deter a person of ordinary firmness from exercising his First Amendment

rights; and (3) a causal link between the constitutionally protected conduct or speech and

the retaliatory action.[13]  Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir.

---

[12]Plaintiff alleges that O'Brien failed to accommodate his litigation needs with respect to the seizure and analysis of the computers.  Compl. ¶ 261.  It does not appear that this allegation is part of plaintiff's First Amendment claim, since no allegation was made that the seizure of the computers (as opposed to the search and prosecution in general) was done in retaliation for plaintiff's engaging in conduct protected by the First Amendment.  This allegation in the complaint may support an assertion that plaintiff was inconvenienced by his inability to access his computers, but it does not support an inference that the computers were taken for any purpose other than securing evidence of the forgery.  Id. ¶¶ 260-63.

[13]The word "speech" was included by this court in elements 1 and 3 to acknowledge that, in some instances, the word "conduct" can mean something other than "speech."  Rumsfeld v. Forum for Academic & Institutional Rights, 547 U.S. 47 (2006).  The word "conduct," as used in the present context, includes "speech" protected by the First Amendment, as well as other First

2006).  Since plaintiff's retaliation claim is brought under a retaliatory prosecution theory,

it is subject to an additional requirement.  In <u>Hartman v. Moore</u>, 547 U.S. 250, 126 S.Ct.

1695 (2006), the Supreme Court held that a plaintiff asserting a retaliatory prosecution

claim under the First Amendment must allege and prove that the defendant's pursuit of

the underlying criminal charge was unsupported by probable cause.[14]  <u>Hartman</u>, 126 S.Ct.

at 1699.  <u>Hartman</u> was decided shortly after the parties in the instant case filed their

briefs.  The Supreme Court explained:

> In sum, the complexity of causation in a claim that prosecution was induced
> by an official bent on retaliation should be addressed specifically in
> defining the elements of the tort.  Probable cause or its absence will be at
> least an evidentiary issue in practically all such cases.  Because showing an
> absence of probable cause will have high probative force, and can be made
> mandatory with little or no added cost, it makes sense to require such a
> showing as an element of a plaintiff's case, and we hold that it must be
> pleaded and proven.

<u>Id.</u> at 1707.  The court has already determined that plaintiff's complaint does not set forth

a claim relating to a lack of probable cause.  Given the holding in <u>Hartman</u>, plaintiff

cannot proceed on the theory that this is one of "those rare cases where strong motive

_____

Amendment freedoms.

[14]Plaintiff's First Amendment claim is apparently based on the Petition Clause, which has
been recognized as the source of a constitutional right to meaningful access to the courts.  <u>Gibson
v. Superintendent of New Jersey Dep't of Law & Pub. Safety–Div. of State Police</u>, 411 F.3d 427,
441 (3d Cir. 2005).  The court concludes that the rule established in <u>Hartman v. Moore</u>, 126 S.Ct.
1695 (2006), applies in this case.  Although the protected activity for First Amendment purposes
allegedly engaged in by plaintiff differs somewhat from the activity engaged in by the plaintiff in
<u>Hartman</u>, the Supreme Court's analysis dealt with the element of *causation* in a retaliatory
prosecution case.  <u>Id.</u> at 1707.  Since the factual differences between this case and <u>Hartman</u> relate
to the nature of the protected conduct or speech rather than the element of causation, <u>Hartman</u> is
controlling.

evidence combines with weak probable cause to support a finding that the investigation and ensuing prosecution would not have occurred but for the defending officials' retaliatory animus."  Id. at 1708 (Ginsburg, J., dissenting)(brackets omitted)(quoting Hartman v. Moore, 388 F.3d 871, 881 (D.C. Cir. 2004).  Consequently, count 7 of the complaint, insofar as it is based upon the First Amendment, does not set forth a claim for retaliatory prosecution and by reason of the specificity of the facts alleged by plaintiff, the court concludes that the plaintiff cannot set forth a claim for retaliatory prosecution under any viable legal theory.  The count must be dismissed with prejudice.[15]

Count 11 of plaintiff's complaint appears to raise an issue that was left open in Hartman.  As part of a more generalized First Amendment claim, plaintiff makes the following statement: "The First Amendment prevents the government from using the power to investigate without relation to any existing need."  Compl. ¶ 144.  In support of this assertion, plaintiff relies on the Supreme Court's decision in DeGregory v. Attorney General of New Hampshire, 383 U.S. 825 (1966).  In Hartman, the Court noted: "Whether the expense or other adverse consequences of a retaliatory investigation would ever justify recognizing such an investigation as a distinct constitutional violation is not

---

[15]The Supreme Court's decision in Hartman makes it unnecessary for the court to evaluate plaintiff's retaliatory prosecution claim under a more generalized causation standard. Hartman, 126 S.Ct. at 1706.  If the court had to do so, however, the significant gap in time between plaintiff's association with Fiore and Nye's alleged retaliatory actions would belie plaintiff's allegations of retaliation and negate any possible inference of causation.  Compl. ¶¶ 34-35, 180-214.  To the extent that plaintiff's retaliatory prosecution claim is based upon Frattare's actions in the aftermath of the subpoena, it is foreclosed by Hartman.

before us." Hartman, 126 S.Ct. at 1705 n.9.  Thus, Hartman did not foreclose the

possibility that a First Amendment retaliation claim could proceed, in the absence of a

showing that probable cause was lacking, against a defendant who conducts "a retaliatory

investigation with a view to promote a prosecution[.]" Id.  Plaintiff's complaint could

reasonably be construed to allege a retaliatory investigation.  For this reason, the court

will address this alternative theory.

In DeGregory, the Supreme Court addressed a situation in which an individual was

jailed for refusing to divulge information about his past political affiliations.  DeGregory,

383 U.S. at 827-28.  The investigation was being conducted pursuant to a statute which

allowed the Attorney General of New Hampshire to make inquiries related to the need for

ascertaining the necessity or propriety of certain legislative initiatives.  Id. at 826.  In that

context, the Supreme Court explained:

> The information being sought was historical, not current.  Lawmaking at the
> investigatory stage may properly probe historic events for any light that may
> be thrown on present conditions and problems.  But the First Amendment
> prevents use of the power to investigate enforced by the contempt power to
> probe at will and without relation to existing need.

Id. at 829.  Plaintiff's complaint clearly does not allege that defendants conducted a

retaliatory investigation under the guise of administering a legislative fact-finding

process.  For this reason, plaintiff's reliance on DeGregory is misplaced.

Notwithstanding plaintiff's misapplication of DeGregory, there is some support for

the principle that retaliatory investigation claims under the First Amendment have a

different dimension than claims alleging retaliatory arrest or retaliatory prosecution.[16]

Mihalick v. Cavanaugh, 26 F.Supp.2d 391, 395-96 (D.Conn. 1998).  While it is unclear whether an absence of probable cause must be established in order for a plaintiff to prevail in a First Amendment action alleging a retaliatory criminal investigation, arguably a retaliatory investigation claim could proceed on the basis of a more generalized causation standard.

In Hartman, the Supreme Court identified two unique characteristics about retaliatory prosecution actions which supported the idea that the absence of probable cause should be included as an element of the claim.  The Court first noted, in a retaliatory prosecution case, that

> there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge.  Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive.

Hartman, 126 S.Ct. at 1704.  Second, the Court pointed out that the issue of causation in a retaliatory prosecution case is often complicated because the causal connection required "is not merely between the retaliatory animus of one person and that person's own

_____

[16]Plaintiff's complaint does not contain a claim for retaliatory arrest under the First Amendment.  Compl. ¶¶ 82-174.

51

injurious action, but between the retaliatory animus of one person and the action of

another."  Id. at 1705.  The Court explained:

> The second respect in which a retaliatory-prosecution case is different also
> goes to the causation that a Bivens plaintiff must prove; the difference is
> that the requisite causation between the defendant's retaliatory animus and
> the plaintiff's injury is usually more complex than it is in other retaliation
> cases, and the need to show this more complex connection supports a
> requirement that no probable cause be alleged and proven.  A Bivens (or §
> 1983) action for retaliatory prosecution will not be brought against a
> prosecutor, who is absolutely immune from liability for the decision to
> prosecute, Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d
> 128 (1976).  Instead, the defendant will be a non-prosecutor, an official,
> like an inspector here, who may have influenced the prosecutorial decision
> but did not himself make it, and the cause of action will not be strictly for
> retaliatory prosecution, but for successful retaliatory inducement to
> prosecute.  The consequence is that a plaintiff like Moore must show that
> the nonprosecuting official acted in retaliation, and must also show that he
> induced the prosecutor to bring charges that would not have been initiated
> without his urging.

Id. at 1704-05 (footnotes omitted).  While reasonable minds could differ as to whether the

first factor would weigh in favor of applying the Hartman rule in a retaliatory

investigation case or any other case outside of the retaliatory prosecution context, it is

clear that plaintiff's retaliatory investigation claim (which the court gleans from the

aforementioned passage in his complaint) is not within the category of cases in which the

ultimate action complained of is taken by someone other than the defendant.  Indeed,

plaintiff's purported retaliatory investigation claim against Nye and Frattare is based on

actions taken by them rather than on actions taken by another person.  Compl. ¶¶ 38-39,

180-214.  Therefore, Hartman does not foreclose plaintiff's retaliatory investigation claim

notwithstanding the court's determination that the ensuing investigation, search, arrest and prosecution were supported by probable cause.

The court's determination that plaintiff's retaliatory investigation claim is not foreclosed by Hartman, however, does not mean that his complaint sets forth a claim for a violation of the First Amendment.  Plaintiff's retaliatory investigation claims against Nye and Frattare must be dismissed for different reasons.  With respect to Nye, the intervening period of time between plaintiff's association with Fiore and the forgery investigation, which lasted more than two decades, precludes a reasonable inference of causation. Under the facts as alleged and accepted as true for the purpose of this motion, plaintiff as a matter of law cannot reasonably establish "a causal link between the constitutionally protected conduct and the retaliatory action."  Thomas, 463 F.3d at 296.  With respect to Frattare, the alleged retaliatory action (i.e., the questioning of Bonetti after plaintiff subpoenaed Frattare, Murphy and Dansak) occurred one month *after* the search of plaintiff's premises.  Compl. ¶¶ 13, 38-39.  Thus, the investigation into the alleged forgery was already underway.[17]  Consequently, based upon the facts set forth in the

---

[17]The court need not decide whether a plaintiff could assert a First Amendment claim under section 1983 on the basis of a specific retaliatory action taken by a defendant during the course of an already-commenced criminal investigation.  Plaintiff's only indication that he is pursuing a retaliatory investigation action is his observation that "[t]he First Amendment prevents the government from using the power to investigate without relation to any existing need."  Compl. ¶ 144.  It is clear from the face of the complaint that the criminal investigation had already begun when Frattare questioned Bonetti.  Id. ¶ 39.  Therefore, the "need" for Frattare to investigate was clear.  Plaintiff does not deny that the Belan letter was forged.  Id. ¶ 30.  Since plaintiff's retaliatory investigation claim is based on an allegation of an unnecessary investigation rather than on an allegation of a specific retaliatory action taken during the course of an

complaint and even drawing all reasonable inferences in favor of plaintiff, plaintiff

cannot state a First Amendment claim under a retaliatory investigation theory.

Plaintiff alleges that O'Brien could have mitigated the hardships caused to plaintiff

as a result of the seizure of his computers, but that he nevertheless "declined to interest

himself" in accommodating plaintiff's litigation needs.  Id. ¶ 261.  He further alleges that

O'Brien was "responsible for making a vast amount of documentation retrievable only by

computer unavailable" at a time in which plaintiff was involved in litigation.  Id. ¶ 262.

Since plaintiff's First Amendment claim is presented as a retaliation claim, it does not

appear that he is asserting a First Amendment claim against O'Brien.  Id. ¶ 145.

Furthermore, it is not clear that someone who is at liberty can state a First Amendment

claim under the Petition Clause merely by alleging that he was denied access to certain

legal documents incident to an otherwise lawful seizure of property.  Lewis v. Casey, 518

U.S. 343, 355 (1996)(recognizing that prison inmates' ability to pursue legal claims

unrelated to their sentences or conditions of confinement may be impaired as an

incidental consequence of conviction and incarceration).   In any event, assuming

*arguendo* that the Petition Clause could be violated under such circumstances, plaintiff

does not allege that he was actually denied access to the courts.  Id. ¶¶ 261-62.  He does

not claim that he suffered an actual injury as a result of the seizure (i.e., the loss or

---

otherwise legitimate criminal investigation, the court need not decide whether Frattare's reaction
to the subpoena (i.e., the questioning of Bonetti) could give rise to a First Amendment retaliation
action premised on a theory other than that advanced by plaintiff in this case.

rejection of a nonfrivolous legal claim).  <u>Lewis</u>, 518 U.S. at 349-63.  Based upon the facts alleged in the complaint and drawing all reasonable inferences in favor of plaintiff, this court concludes that plaintiff cannot show that his pursuit of the "underlying cause of action" was frustrated.  <u>Gibson v. Superintendent of New Jersey Department of Law and Public Safety–Division of State Police</u>, 411 F.3d 427, 442 (3d Cir. 2005).  Plaintiff cannot establish a violation of the Petition Clause.  <u>Jordan v. Bellinger</u>, 123 F.Supp.2d 228, 229 (D.Del. 2000); <u>Robinson v. Ridge</u>, 996 F.Supp. 447, 449-50 (E.D.Pa. 1997).

To the extent that counts 7 and 11 of plaintiff's complaint are based upon alleged violations of the First Amendment and by reason of the facts plead in his complaint and all reasonable inferences drawn in his favor demonstrating that there is no viable legal theory under federal law upon which plaintiff can proceed, those counts must be dismissed with prejudice.  Plaintiff will be able, of course, to raise his retaliation cause of action under the Pennsylvania Constitution in state court.  Compl. ¶¶ 142, 152-53.

### (5)  Fourteenth Amendment

Count 11 of plaintiff's complaint alleges violations of the Due Process Clauses of the Fifth and Fourteenth Amendments.  <u>Id.</u> ¶¶ 149-51.  At the outset, it is worth noting that the complaint clearly states no violation of the Fifth Amendment.  All of the allegations contained in the complaint are against state officials.  No federal officials are involved and no federal actions are alleged.  The Due Process Clause of the Fifth Amendment limits only federal action.  <u>Yanaki v. Iomed, Inc.</u>, 415 F.3d 1204, 1207 n.4

55

(10th Cir. 2005).  Therefore, plaintiff's allegations implicate only the Fourteenth

Amendment.

Count 11 appears to allege a due process violation under Brady v. Maryland, 373

U.S. 83 (1963).[18]  Compl. ¶¶ 149-51.  The court's conclusion is based upon plaintiff's

reference to "exculpatory information" and his citation to Kyles v. Whitley, 514 U.S. 419

(1995).  In Brady, the United States Supreme Court held that "the suppression by the

prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution."  Brady, 373 U.S. at 87.  Evidence is material if there is a

"reasonable probability" that, had the evidence been disclosed to the defense, the result of

the underlying proceeding would have been different.  Youngblood v. West Virginia, 126

S.Ct. 2188, 2190 (2006) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).  In

Kyles, the Supreme Court held that the state's obligation under Brady to disclose

evidence favorable to the defense turns on the cumulative effect of all evidence

suppressed by the government, and that "the prosecutor remains responsible for gauging

---

[18]Due process violations under Brady v. Maryland, 373 U.S. 83 (1963), are most often characterized as procedural due process violations.  Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir. 2004)(referring to the Brady doctrine as a "procedural due process" doctrine).  Nevertheless, where a Brady violation is deliberate, it has been characterized as a substantive due process violation on the ground that it "shocks the contemporary conscience."  Maher v. Town of Ayer, 463 F.Supp.2d 117 (D.Mass. 2006).  Since plaintiff's complaint raises no cognizable Brady violation, there is no need for the court to ascertain the theory upon which plaintiff purports to rely.

that effect regardless of any failure by the police to bring favorable evidence to the

prosecutor's attention."  Kyles, 514 U.S. at 421.  The Court explained:

> While the definition of Bagley materiality in terms of the cumulative effect
> of suppression must accordingly be seen as leaving the government with a
> degree of discretion, it must also be understood as imposing a
> corresponding burden.  On the one side, showing that the prosecution knew
> of an item of favorable evidence unknown to the defense does not amount
> to a Brady violation, without more.  But the prosecution, which alone can
> know what is undisclosed, must be assigned the consequent responsibility to
> gauge the likely net effect of all such evidence and make disclosure when
> the point of "reasonable probability" is reached.  This in turn means that the
> individual prosecutor has a duty to learn of any favorable evidence known
> to the others acting on the government's behalf in the case, including the
> police.  But whether the prosecutor succeeds or fails in meeting this
> obligation (whether, that is, a failure to disclose is in good faith or bad faith,
> see Brady, 373 U.S. at 87), the prosecution's responsibility for failing to
> disclose known, favorable evidence rising to a material level of importance
> is inescapable.

Kyles, 514 U.S. at 437-38.  The language in Kyles regarding a prosecutor's duty to learn

of evidence favorable to the defendant clearly refers to evidence known by others acting

on the government's behalf.  It does not refer, as plaintiff appears to suggest, to a more

generalized category of potentially exculpatory evidence unknown to participants in the

preparation of the prosecution's case.  Compl. ¶ 150.

Since section 1983 does not create any substantive rights, plaintiff must allege an

underlying violation of the Due Process Clause in order to proceed further with his claim.

Smith v. Holtz, 210 F.3d 186, 195 (3d Cir. 2000).  Consequently, the court must begin the

inquiry by identifying "the exact contours of the underlying right said to have been

violated."  Lewis, 523 U.S. at 841-842 n.5.  To establish a due process violation under

Brady, "it must be shown that: (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006). Since the test is objective, no bad-faith inquiry is required. Id. "The affirmative duty to disclose reaches impeachment evidence as well as exculpatory evidence." Smith, 210 F.3d at 195 n.11. Although "this duty of disclosure is tightly tethered to constitutional guarantees of due process, 'the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.'" Id. at 196 (quoting Kyles, 514 U.S. at 436-37). "[T]he prosecution's failure to disclose evidence rises to the level of a due process violation 'only if the government's evidentiary suppression undermines confidence in the outcome of the trial.'" Id. (quoting Kyles, 514 U.S. at 434). "The question of whether the prosecution must disclose evidence, i.e., whether the evidence is Brady material, must be determined independently of an inquiry into whether suppression of that evidence undermines confidence in the outcome of a criminal trial, i.e., whether the evidentiary suppression constitutes a Brady violation." Id. In Strickler v. Greene, 527 U.S. 263 (1999), the Supreme Court explained:

> [T]he term "Brady violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence–that is, to any suppression of so-called "Brady material"–although, strictly speaking, there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence

58

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

Strickler, 527 U.S. at 281-82.  Thus, it is clear that more than a mere failure to disclose

exculpatory evidence is required in order to establish a due process violation under Brady.

In Gibson v. Superintendent of New Jersey Department of Law and Public Safety-

Division of State Police, 411 F.3d 427, 443 (3d Cir. 2005), the United States Court of

Appeals for the Third Circuit held that police officers and other state officials may be

liable under section 1983 for failing to disclose exculpatory information to the prosecutor.

Gibson, however, dealt with a situation in which the plaintiff alleged that police officers

had affirmatively concealed material evidence from the prosecutor.  Id.  It is now clear

that, under Gibson, police officers and other state actors may be liable under section 1983

for due process violations under Brady.  Yarris v. County of Delaware, 465 F.3d 129, 141

(3d Cir. 2006).  The mere failure of a police officer, however, to disclose exculpatory or

impeachment evidence to the prosecutor does not itself constitute a violation of the Due

Process Clause.  Smith, 210 F.3d at 196.  No Brady violation can occur unless the

undisclosed evidence is "material" for purposes of the Brady inquiry.  Albrecht v. Horn,

471 F.3d 435, 460 (3d Cir. 2006).

In the instant case, the facts set forth in the complaint and all reasonable inferences

drawn in favor of plaintiff require a finding that plaintiff cannot state a claim for a due

process violation under Brady.  First of all, plaintiff asserts that Frattare failed to

investigate the possibility that someone other than plaintiff had committed the forgery,

and thus cannot argue that evidence should have been turned over to the prosecutor.

Compl. ¶¶ 218-59. Since it is the lack of evidence upon which plaintiff relies, he cannot

show that the "suppressed" evidence (if any exists) was favorable to him.  Finally, the

facts alleged by plaintiff show that he was never convicted of forgery or attempted theft

by unlawful taking.  Consequently, he cannot claim that the "evidence" was material to

his *guilt* or *punishment*.  United States v. Wirtz, 357 F.Supp.2d 1164, 1171 (D.Minn.

2005)("Because of the acquittal, the alleged Brady violation did not occur in the

commercial airlines fraud trial.").  Accordingly, to the extent that plaintiff asserts a due

process violation based upon the alleged failure of defendants to uncover evidence and in

light of the dismissal of the charges in issue, plaintiff cannot state a claim upon which

relief can be granted.

Although plaintiff appears to place extensive reliance on the decision of the United

States Court of Appeals for the Ninth Circuit in Commonwealth of the Northern Mariana

Islands v. Bowie, 243 F.3d 1109 (9th Cir. 2001), it is unclear how that decision supports

his arguments relating to a purported violation of the Due Process Clause.  Compl. ¶ 150.

Bowie involved a situation in which the prosecuting authorities were believed to have

been complicit in the presentation of perjured testimony.  Bowie, 243 F.3d at 1114-25.

Here plaintiff's factual allegations are that the guilt of someone else was an "equal

possibility."  Under those facts, the reliability of the evidence against him is not in issue.

Compl. ¶ 33.  It is not a violation of the Due Process Clause for prosecuting authorities to

pursue a case against someone who could have an equal possibility of being found to have committed an offense.  Plaintiff faults Frattare for failing to collect various forms of evidence.  Id. ¶¶ 218-59.  A decision on the part of prosecuting authorities to pursue a criminal case without investigating every hypothetical alternative of which they could conceive differs meaningfully from a decision to commence a prosecution on the basis of evidence known to be tainted.  While the latter may raise serious constitutional problems, the former clearly does not.

It is not clear what other bases plaintiff purports to rely on for the purpose of establishing a Fourteenth Amendment violation.  He makes the general assertion that the deprivation of property rights is a proper "constitutional claim" under section 1983.[19]  Id. ¶ 151.  Section 1983, however, does not create any substantive rights.  Smith, 210 F.3d at 195.  Instead, it provides a remedy for a plaintiff seeking redress against state officials for violations of federal law (i.e., "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]").  42 U.S.C. § 1983.  The Fourteenth Amendment does not prohibit a state from depriving a person of property.  Instead, it prohibits a state from depriving a person of property "without due process of law."  U.S. CONST. amend. XIV, § 1.  Issues with respect to procedural safeguards are not implicated

---

[19]The complaint, construed liberally by the court for purposes of the instant motion to dismiss, does not allege that defendants' actions were somehow random or unauthorized. Instead, the facts asserted in the complaint and all reasonable inferences from those facts drawn in favor of plaintiff are consistent with an ordinary criminal investigation supported by probable cause.

in the complaint.  Compl. ¶ 11.   The facts alleged in the complaint and all reasonable inferences from those facts drawn in plaintiff's favor warrant a finding that there is no viable legal theory upon which plaintiff could state a claim for a procedural due process violation.

With respect to substantive due process issues, the facts set fort in the complaint and all reasonable inferences from those facts drawn in favor of plaintiff cannot support a finding that this case "shocks the conscience."  Chavez v. Martinez, 538 U.S. 760, 774 (2003) (plurality opinion).  As the Supreme Court explained in County of Sacramento v. Lewis, 523 U.S. 833 (1998), "the constitutional concept of conscience-shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."  Lewis, 523 U.S. at 848.  Most of the factual allegations contained in the complaint involve matters covered under the Fourth Amendment and, therefore, not subject to substantive due process analysis.  Id. at 843-45; Albright v. Oliver, 510 U.S. 266, 268-75 (1994) (plurality opinion).  To the extent that plaintiff believes that any alleged conduct not addressed by a specific provision in the Bill of Rights violates the Due Process Clause, the court finds that the facts set forth in the complaint and all reasonable inferences from those facts drawn in plaintiff's favor do not even remotely approach the conscience-shocking threshold.  "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8.  The detailed factual assertions in the complaint necessitate the conclusion that plaintiff cannot meet this threshold.  Accordingly, plaintiff cannot state claim for a substantive due process violation.

In summary, since section 1983 creates no substantive rights, plaintiff cannot proceed under section 1983 without alleging an underlying violation of federal law. Smith, 210 F.3d at 195.  The Attorney General's Office and the Treasurer's Office are not "persons" within the meaning of section 1983.  Will, 491 U.S. at 71.  The complaint fails to allege that Fisher and Hafer were sufficiently involved with the handling of plaintiff's prosecution to warrant liability under section 1983.  Evancho, 423 F.3d at 353-55.   The facts alleged and all reasonable inferences from those facts drawn in favor of plaintiff establish that plaintiff cannot state a claim against Nye, Frattare, O'Brien or Chapel which constitutes a violation of the United States Constitution.  Plaintiff's claims under section 1983, therefore, must be dismissed with prejudice.  Given the specificity of the complaint, it is clear that any attempts by plaintiff to amend would be futile.  Shane, 213 F.3d at 115 ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

### B.  Causes of Action Arising Under Pennsylvania Law

Most of the counts contained in the complaint arise under Pennsylvania law. Compl. ¶¶ 82-135, 152-74.  Defendants have not addressed each of these counts

individually, contending only that plaintiff's causes of action cannot proceed because they do not fall within the exceptions to sovereign immunity enumerated in 42 PA. CONS. STAT. § 8522.

This court has "dismissed all claims over which it has original jurisdiction," and will decline to exercise supplemental jurisdiction over plaintiff's Pennsylvania law causes of action pursuant to 28 U.S.C. § 1367(c)(3).  Under 28 U.S.C. § 1441(c), this court has the authority to "remand all matters in which State law predominates."  Since this case was removed from the Pennsylvania Court of Common Pleas, Allegheny County, the court will remand plaintiff's state law causes of action to that court.  This court expresses no opinion with respect to whether any of the counts contained in the complaint assert cognizable causes of action under Pennsylvania law.  It suffices to say that plaintiff alleges no violation of the United States Constitution, and that all of his claims under section 1983 must be dismissed with prejudice.

### *Conclusion*

**AND NOW**, this <u>16th</u> day of March 2007, upon consideration of the factual assertions in the complaint, the motion to dismiss filed by defendants and the submission of the parties, **IT IS ORDERED** that defendants' motion to dismiss (Doc. No. 6) is **GRANTED** as to count 11 of plaintiff's complaint and as to all other counts contained in the complaint insofar as they are based upon alleged violations of the United States Constitution.  Defendants' motion to dismiss (Doc. No. 6) is **DENIED** without prejudice

as to counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14 and 15 insofar as they are based upon

causes of action arising under Pennsylvania law.  All of plaintiff's causes of action arising

under Pennsylvania law are **REMANDED** to the Court of Common Pleas, Allegheny

County, Pennsylvania,  **FORTHWITH**.

      The clerk shall mark this case closed.

                   By the court:


                   /s/ Joy Flowers Conti
                   Joy Flowers Conti
                   United States District Judge

cc:    Mary Lynch Friedline
       Senior Deputy Attorney General
       Office of Attorney General
       6th Floor, Manor Complex
       564 Forbes Avenue
       Pittsburgh, Pa.  15219

       John Gagliardi
       191 Wall Road
       Jefferson Hills, Pa.  15025